UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHARLES ROBINSON

      Applicant,

v.                                 CASE NO. 8:14-cv-1652-T-23JSS

SECRETARY, Department of Corrections,

      Respondent.

_____/

## ORDER

      Charles Robinson applies for the writ of habeas corpus under 28 U.S.C.

§ 2254 (Doc. 23) and challenges the validity of his state conviction for manslaughter,

for which conviction Robinson serves twenty-two years imprisonment followed by

three years of probation.  Numerous exhibits ("Respondent's Exhibit __") support the

response.  (Doc. 64)  The respondent admits the application's timeliness. (Doc. 64,

p. 15)  Robinson also moves for judgment on the pleadings.  (Doc. 80)

## FACTS[1]

      The victim, Luscious Smith, hired Robinson and Leon Martin to help him

move furniture from Chicago to the Tampa area in a tractor trailer truck.  On

August 3, 2003, Robinson went to the police and asked to speak to an officer

"because there had been a murder and he thought they might be looking for

---

[1] This factual summary derives from Robinson's brief on direct appeal and the record.
(Respondent's Exhibits 3 and 5)

him." (Respondent's Exhibit 5, p. 3)  Robinson advised the police that he and the victim had gotten into an altercation and that the victim was dead.  Robinson led the police to a truck, in which they found the victim dead.  The police discovered blood on the victim and inside the truck.  Also, the police discovered a fire extinguisher next to the victim.  Forensic testing showed the victim's blood and DNA on the fire extinguisher.  A stain on Robinson's shorts matched the victim's DNA.  DNA from fingernail scrapings from the victim matched Robinson's DNA.  The victim suffered several injuries, including fractures to his upper and lower jaws, cheek bones, and nasal bones.  The medical examiner opined that the victim died from blunt force trauma to his head and face.

Robinson was arrested and charged with second-degree murder.  Before trial Robinson successfully moved to suppress certain of his statements to the police.  Robinson elected to waive his right to a jury trial and proceeded to a bench trial.  The trial judge found Robinson guilty of the lesser-included offense of manslaughter, a second-degree felony.  The trial judge concluded that the fire extinguisher used to kill the victim was a deadly weapon.  Consequently, the trial judge applied a state sentencing enhancement and reclassified the offense of conviction from a second-degree felony to a first-degree felony.  Robinson serves twenty-two years imprisonment followed by three years of probation.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Robinson's application.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210

(11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." Bell v. Cone, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). See White v. Woodall, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (citing Richter); Woods v. Donald, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (quoting Woodall, 572 U.S. at 419). Accord Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions

are given effect to the extent possible under law." Bell v. Cone, 535 U.S. at 694.  A federal court must afford due deference to a state court's decision.  "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, 559 U.S. 766, 779 (2010).  See also Cullen v. Pinholster, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).  When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable.  Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable.").  When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." Wilson, 138 S. Ct. at 1192.  "[T]he State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." Wilson, 138 S. Ct. at 1192.

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Robinson's conviction and sentence.  (Respondent's Exhibit 8)  In another *per curiam* decision without a written opinion the state

appellate court affirmed the denial of Robinson's subsequent Rule 3.850 motion for post-conviction relief. (Respondent's Exhibit 14) The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and *Bishop v. Warden*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even absent an "opinion" or "analysis").

As *Pinholster*, 563 U.S. at 181–82, explains, review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

Robinson bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State

court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state court's rejection of Robinson's post-conviction claims warrants deference in this case. (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibit 21)

## INEFFECTIVE ASSISTANCE OF COUNSEL

Robinson claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Robinson must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691. To meet this burden, Robinson must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic

choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Robinson cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). The required extent of counsel's investigation was addressed in *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir. 2014), *cert. denied sub nom., Hittson v. Chatman*, 135 S. Ct. 2126 (2015):

> [W]e have explained that "no absolute duty exists to investigate particular facts or a certain line of defense." *Chandler*, 218 F.3d at 1317. "[C]ounsel has a duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066 (emphasis added). "[C]ounsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." *Chandler*, 218 F.3d at 1318. "In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to

> counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527, 123 S. Ct. at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel has no duty to raise a frivolous claim).

Under 28 U.S.C. § 2254(d) Robinson must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 106. *See also Pinholster*, 563 U.S. at 202 (an applicant must overcome this "'doubly deferential' standard of *Strickland* and [the] AEDPA"), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is "doubly deferential."), *cert. denied*, 134 S. Ct. 191 (2013).

Because the state court correctly recognized that Strickland governs each claim of ineffective assistance of counsel, Robinson cannot meet the "contrary to" test in Section 2254(d)(1). Instead, Robinson must show that the state court unreasonably applied Strickland or unreasonably determined the facts. In determining "reasonableness," a federal application for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its Strickland inquiry," not an independent assessment of whether counsel's actions were reasonable. Putnam v. Head, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), cert. denied, 537 U.S. 870 (2002). The presumption of correctness and the highly deferential standard of review requires that the analysis of each claim begin with the state court's analysis.

## I.    COGNIZABILITY, EXHAUSTION AND PROCEDURAL DEFAULT

**Grounds One and Three**

In both grounds one and three Robinson alleges that the state failed to notify him of the state's intent to seek a sentencing enhancement if he was convicted of the lesser-included offense of manslaughter. In each ground Robinson alleges that he "was not made aware of the possibility of an enhancement prior to trial" and "was not able to prepare a defense against the state's intention." (Doc. 23, pp. 5, 8) Robinson argues that the lack of notice violates his right to due process.

The respondent argues that both grounds are procedurally defaulted. Robinson avers that he presented both grounds to the state court on direct appeal

and in a Rule 3.800(b)(2) motion to correct sentence.[2] (Doc. 23, pp. 6 and 9; Doc. 75, pp. 11 and 15) Robinson presents in his application no factual support for either ground. He argues in his reply that "[t]he information states in pertinent part: 'by hitting or striking the victim and in do[ing] so the said defendant used his hand and/or blunt object." (Doc. 75, p. 11) Further, he argues in the reply that (1) "[t]he term 'deadly weapon' does not appear anywhere in the information," (2) "[t]here is no reference to the enhancement statute located anywhere within the charging information," and (3) he "was not made aware of the state's intent to seek an enhancement of his conviction until after the defense rested." (Doc. 75, p. 14)

To the extent that Robinson raises in the federal application the same ground he presented to the state court in "issue one" of both his direct appeal and his Rule 3.800(b)(2) motion, he cannot obtain relief. In the federal application Robinson asserts that the state's failure to provide notice of the intent to seek a sentence enhancement violates his right due process. When he raised this issue in the state court, he asserted only a violation of his Sixth Amendment right to a jury trial, a claim he does not raise in the federal application. Consequently, the federal due process claim is unexhausted.

Before a federal court can grant habeas relief, an applicant must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1)(A), (C). "[T]he state

---

[2] The record includes a copy of the Rule 3.800(b)(2) motion but not a copy of either the state's response or a final disposition. In his reply Robinson claims that the state court ordered the state to respond to the motion but the state failed to comply. (Doc. 75, p. 11, n.10)

prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted). To exhaust a claim, an applicant must present the state court with both the particular legal basis for relief and the facts supporting the claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

"If the [applicant] has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, an applicant "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To show

prejudice, an applicant must demonstrate not only that an error at the trial created the possibility of prejudice but that the error worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimension. *United States v. Frady*, 456 U.S. 152 (1982). In other words, an applicant must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892.

Absent a showing of cause and prejudice, an applicant may obtain federal habeas review of a procedurally defaulted claim only if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 495 96 (1986). A fundamental miscarriage of justice occurs if a constitutional violation has probably resulted in the conviction of someone who is "actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet the "fundamental miscarriage of justice" exception, an applicant must show constitutional error coupled with "new reliable evidence — whether . . . exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324.

State procedural rules preclude Robinson from returning to state court to present the federal due process claim in either a second direct appeal or an untimely collateral motion for post-conviction relief, rendering the claim procedurally defaulted. Robinson fails to demonstrate cause for the default of his claim because he fails to show that some "external factor" prevented him from raising the federal claim on either direct appeal or state collateral review. *Wright*, 169 F.3d at 703.

Robinson likewise fails to establish prejudice because he does not show that the alleged error infected the entire trial with constitutional error. *Frady*, 456 U.S. at 170. He cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Robinson satisfies neither exception to procedural default, both ground one and ground three are procedurally barred from federal review.

**Grounds Two and Four**

In both grounds two and four Robinson contends that the state failed to "present any proof or evidence to the trial court establishing that [he] ever possessed the fire extinguisher." (Doc. 23, pp. 7 and 10) He argues that "because the weapon was used to enhance [his] conviction/sentencing, the court violated [his] constitutional right to a trial by jury and his right to due process." (Doc. 23, pp. 7 and 10) In his reply Robinson argues that the alleged error violates both *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004).[3]

Robinson avers that he presented these grounds to the state court in both his direct appeal and his Rule 3.800(b)(2) motion to correct sentence. Although similar, the allegations that Robinson presents in the federal application differ from those presented to the state court. In the federal application Robinson argues that the state

---

[3] *Apprendi* holds that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." 530 U.S. at 490. *Blakely*, 542 U.S. at 303–04, determined that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." (emphasis in original).

presented no evidence that he used a weapon. In both his direct appeal and his Rule 3.800(b)(2) motion Robinson argued that "the trial court erred [under *Apprendi* and *Blakely*] by enhancing his sentence based upon factors not specifically found by a jury nor to which he specifically acknowledged or agreed." (Respondent's Exhibit 5, p. 16; Exhibit 7, p. 3) To the extent that he argues that the state presented no evidence of a weapon, Robinson cannot obtain relief because he did not present this claim to the state court, rendering the claim unexhausted and procedurally defaulted. Because Robinson satisfies no exception to overcome the default, the claim is procedurally barred from federal review.

To the extent that he presents in the federal application the same *Apprendi*/*Blakely* argument that he raised on direct appeal, Robinson likewise cannot obtain relief. Robinson elected to have a bench trial. Accordingly, he waived his right to have a jury sit as the finder of fact. Because Robinson elected to have a judge find the facts necessary to convict him, and because those same facts support his sentence enhancement,[4] neither his conviction nor his sentence violates either *Apprendi* or *Blakely*. *See, e.g., Mack v. Battaglia*, 441 F.Supp.2d 928, 933 (N.D. Ill. 2006) ("Because Mack elected to have a judge find the facts necessary to convict or

---

[4] *See, e.g., Bunkley v. State*, 882 So. 2d 890, 922 (Fla. 2004) ("Whether an object used as a weapon in an assault is a deadly weapon is a factual question to be resolved by the finder of facts at trial and is to be determined upon consideration of its likelihood to produce death or great bodily injury.") (quoting *Nixon v. State*, 295 So. 2d 121, 122 (Fla. 3d DCA 1974)); *J.L. v. State*, 60 So. 3d 462, 464–65 (Fla. 1st DCA 2011) (noting that "[w]hether a weapon is a deadly weapon is a question of fact that should be submitted to the [trier of fact] 'to be determined under all the circumstances, ... [including] the weapon and its capability for use.'").

acquit him, and because those same facts support his current natural life sentence, his current incarceration does not offend the *Apprendi* rule.").

The state appellate court by affirming Robinson's conviction and sentence neither unreasonably applied *Apprendi* or *Blakely* nor unreasonably determined the facts. 28 U.S.C. § 2254(d)(1), (d)(2). This ground warrants no relief.

**Grounds thirteen through sixteen**

In ground thirteen Robinson contends that the trial court violated his substantive due process rights by considering his suppressed statements to the police in determining his guilt. In ground fourteen Robinson contends that the trial court violated his substantive due process rights by considering the suppressed statements to enhance his conviction from a second-degree felony to a first-degree felony. In ground fifteen Robinson contends that the trial court violated his substantive due process rights by admitting into evidence both a photograph and the "shorts" Robinson wore on the night of the crime. Robinson alleges that this evidence was inadmissible "derivative evidence" obtained as a result of his suppressed statements. In ground sixteen Robinson contends that the trial court "deprived [him] of his right to due process" by trying him based on an allegedly defective information.[5]

---

[5] In ground sixteen Robinson alleges that a police detective provided the state attorney with Robinson's statements obtained during a custodial interrogation. Robinson alleges that the state used these statements to form the basis of the information that charges Robinson with second-degree murder. Robinson argues that after the court granted his motion to suppress certain of his statements to the detective, "the information effectively became null and void." (Doc. 23, p. 38) Robinson further argues that the state could not use his statements to develop the factual basis for the charge because "[t]he Fifth Amendment to the United States Constitution forbids the accused to provide evidence . . .against [himself] in criminal proceedings." (Id.) Robinson asserts that because the

(continued...)

The respondent correctly argues that each of these grounds is procedurally barred from federal review. Robinson presented these grounds to the state court in a state habeas petition. (Respondent's Exhibit 19) The state post-conviction court rejected the grounds for procedural reasons (Respondent's Exhibit 20, pp. 1–2):

> To the extent that Petitioner's petition alleges trial court error, such allegations should have been properly raised on direct appeal and are not properly filed in a petition for habeas corpus. *See Wright v. State*, 857 So. 2d 861 (Fla. 2003) (holding that a petition for habeas corpus may not be used to argue issues that should have been raised on direct appeal or in a post-conviction proceeding. To the extent that Defendant's petition challenges his judgment and sentence, it should be treated as an untimely postconviction motion filed pursuant to rule 3.850. *See Barnard v. State*, 949 So. 2d 250, 251 (Fla. 3d DCA 2007) (holding that petitions for habeas corpus may not be used to file successive 3.850 motions or to raise issues which would be untimely if considered as a motion for post-conviction relief under rule 3.850). . . . Here, the Second District Court of Appeal affirmed the Defendant's conviction and sentence and issued a mandate on June 30, 2006. Defendant's motion was filed on June 5, 2013, which is more than two years after the mandate and Defendant has not alleged any of the three exceptions to the two-year time limit provided for in rule 3.850 (b). Therefore, the Court finds that Defendant's petition should be denied as untimely.

---

detective was not a witness to the crime and because Robinson's own statements could not be used to incriminate him, "there is no legal foundation for the charging information against [him]" and "[w]ith no information, the court does not have subject matter jurisdiction." (Id.)

Although Robinson — in an attempt to elude the preclusive effect of procedural bar — characterizes his ground as a challenge to the trial court's subject matter jurisdiction, his ground actually challenges the sufficiency of the information. "A criminal information is fundamentally defective 'only where it totally omits an essential element of the crime or is so vague, indistinct, or indefinite that the defendant is misled or exposed to double jeopardy." *Perley v. State*, 947 So. 2d 672, 674 (Fla. 4th DCA 2007) (citations omitted). In Robinson's case the information cites the relevant statute for second-degree murder, incorporates the elements of the charged offense, identifies Robinson as the perpetrator, cites the date of the offense, and names the victim. (Respondent's Exhibit 1, pp. 12–13) Robinson cites no defect in the information and, even if he did, the court's subject matter jurisdiction, which is governed by constitution and statute, is unaffected. For a helpful explanation of the distinction between a jurisdictional defect and a non-jurisdictional defect, see Chief Judge Carnes's excellent discussion in *Santiago-Lugo v. Warden*, 785 F.3d 467, 472–475 (11th Cir. 2015).

> Furthermore, the Court finds Petitioner's petition is successive
> under rule 3.850(f). . . . As such, no relief is warranted.

The failure of an applicant to adhere to state procedural rules governing the proper presentation of a claim generally bars federal review of the ground in a federal habeas proceeding. *See Coleman v. Thompson*, 501 U.S. 722 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 97 (1977); *Sims v. Singletary*, 155 F.3d at 1311. "However, a state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly confirms relying on a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion" or in a "manifestly unfair manner." *Judd*, 250 F.3d at 1313.

The state court's denial of Robinson's grounds of trial court error is based on state procedural rules which were not intertwined with an interpretation of federal law. The state court's findings that the grounds are either not cognizable in a state habeas petition or untimely if considered as a Rule 3.850 motion rest on independent and adequate state grounds that preclude federal habeas review. *See e.g., Jennings v. McDonough*, 490 F.3d 1230, 1247–48 (11th Cir. 2007) (holding that a state court's

finding the applicant's claims procedurally barred by Florida's rule against successive postconviction motions was a state law ground independent of the federal question and adequate to support the state court's judgment, thereby rendering the claims procedurally defaulted on federal habeas review); *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (noting that a state appellate court's *per curiam* affirmance of the lower court's ruling explicitly based on procedural default is a clear and express statement of reliance on an independent and adequate state law ground barring federal review). *See also Harris v. Reed*, 489 U.S. 255, 262 (1989) ("[A] federal claimant's procedural default precludes federal habeas review, like direct review, only if the last state court rendering a judgment in the case rests its judgment on the procedural default."). State procedural rules preclude Robinson's returning to state court to present his grounds of trial court error in either a second direct appeal or an untimely Rule 3.850 motion. Robinson's failure to properly exhaust these grounds in the state courts results in a procedural default.

In his reply Robinson claims that, because he was represented by court-appointed appellate counsel, "the State is responsible for any default of the claims presented in [his] state habeas petitions and 'cause and prejudice' is established." (Doc. 75, p. 44) Although ineffective assistance of appellate counsel can provide cause for the procedural default of a claim of trial court error, Robinson must have first exhausted the ineffective assistance of appellate counsel claim, which he failed to do. *See Edwards v. Carpenter*, 529 U.S. 446, 45–B51 (2000) (concluding that a federal habeas court is barred from considering a procedurally defaulted

ineffective assistance of counsel claim as cause for procedural default of another claim); *Hill v. Jones*, 81 F.3d 1015, 1029 31 (11th Cir. 1996) (noting that the Supreme Court's jurisprudence on procedural default dictates that a procedurally defaulted claim of ineffective assistance cannot serve as cause to excuse a default of a second claim). Because Florida procedural rules preclude Robinson from filing an untimely state habeas petition alleging the ineffective assistance of appellate counsel, that claim is procedurally defaulted. Consequently, appellate counsel's alleged ineffectiveness cannot excuse the procedural default of Robinson's grounds of trial court error. Robinson cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Robinson satisfies neither exception to procedural default, grounds thirteen through sixteen are procedurally barred from federal review.

**Ground Seventeen**

Robinson contends that the trial court deprived him of his right to due process by sentencing him without first ordering a PSR. The respondent opposes the ground as procedurally barred because Robinson "did not present this ground [to the state court] in a procedurally correct manner." (Doc. 64, p. 62) The respondent asserts that Robinson raised this ground in the state court in a petition for a writ of mandamus. Neither the respondent nor Robinson provides a copy of the petition. The respondent alleges that the state appellate court docket in case number 2D14-1755 shows that the petition was denied without an opinion. Robinson does

not contest the respondent's representation and does not allege that he raised this ground in any appeal or state post-conviction motion. In his reply Robinson "concedes that this issue could have been or should have been preserved at trial and then raised on direct appeal." (Doc. 75, p. 45) He asserts the ineffective assistance of his appellate counsel as cause to overcome the default.

Robinson failed to exhaust a claim of ineffective assistance of appellate counsel in the state court. *See Carpenter*, 529 U.S. at 451; *Hill*, 81 F.3d at 1029–31. Because Florida procedural rules preclude Robinson from filing an untimely state habeas petition alleging the ineffective assistance of appellate counsel, that claim is itself procedurally defaulted. Consequently, appellate counsel's alleged ineffectiveness cannot excuse the procedural default of Robinson's due process ground. Robinson cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Robinson satisfies neither exception to procedural default, ground seventeen is procedurally barred from federal review.

**Ground Eighteen**

Robinson contends that "[t]he State violated the trial court's order by failing to bring [him] to trial within 90 days of a mandate from the district court of appeals [and], in doing so, the state violated [his] speedy trial right under the speedy trial rule." (Doc. 23, p. 42) Robinson argues that "the failure to discharge [him] based on a violation of his speedy trial rights under Fla. R. Crim. P. 3.191(p) will only serve to deprive him of his constitutional right to due process." (Doc. 23, p. 42)

The respondent correctly argues that, to the extent Robinson asserts a violation of Florida's speedy trial rule, he cannot obtain relief because he alleges no violation of a federal right. *See Castillo v. Fla.*, 630 F. App'x 1001, 1006 (11th Cir. 2015) ("Castillo's claim based on Rule 3.191 is not cognizable on federal habeas review because it involves only state procedural rules and not errors of federal constitutional dimension.") (citation omitted); *Sneed v. Fla. Dep't of Corr.*, 496 F. App'x 20, 25 (11th Cir. 2012) ("To the extent that Sneed alleged a violation of Florida's speedy trial rules, that type of claim is not cognizable on federal habeas review because it only involves state procedural rules rather than errors of federal constitutional dimension."). Federal habeas relief for a person in custody under the judgment of a state court is available only on the ground that the custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Whether the trial court properly applied a state procedural rule is a matter of state law that is not cognizable on federal habeas corpus review. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.") (internal quotations and citations omitted); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to re–examine state-court determinations on state-law questions.").

To the extent that Robinson argues a federal due process violation, he cannot obtain relief because he did not exhaust the federal claim in state court.[6] Robinson admits "[t]he State's violation of speedy trial is an issue that should have and could have been raised on direct appeal" and asserts that his "appellate counsel was ineffective for failing to raise it in direct appeal." (Doc. 75, p. 48–49) Robinson did not exhaust the ineffective assistance of appellate counsel claim in state court. *See Carpenter*, 529 U.S. at 451; *Hill*, 81 F.3d at 1029. Because Florida procedural rules preclude Robinson from filing an untimely state habeas petition alleging the ineffective assistance of appellate counsel, that claim is itself procedurally defaulted. Consequently, appellate counsel's alleged ineffectiveness cannot satisfy the cause and prejudice exception to procedural default. Robinson cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Robinson satisfies neither exception to procedural default, ground eighteen is procedurally barred from federal review.

## II.  <u>MERITS</u>

Robinson's remaining grounds are exhausted and entitled to review on the merits.

---

[6] Robinson avers in his federal application that he challenged the alleged speedy trial violation in a state petition for a writ of mandamus. (Doc. 23, p. 43) In that petition Robinson cited only state law and state procedural rules. (Respondent's Exhibit 30) He raised no federal due process violation.

**Ground Five**

Robinson contends that his trial counsel rendered ineffective assistance by not objecting to the sentencing enhancement. Robinson claims that the information "did not clearly state by name or statutory number the enhancement statute" and that no "deadly weapon" is designated in the information. Robinson argues that trial counsel "should have objected to the [state's] request [for enhancement] because utilization of the statute extremely prejudiced [him]," resulting in a denial of his rights under the Sixth and Fourteenth amendments. (Doc. 23, p. 16) The state post-conviction court denied this ground in Robinson's Rule 3.850 motion (Respondent's Exhibit 9, pp. 82–83) (court's record citations omitted):

> Defendant alleges counsel, Deborah Goins, was ineffective for failing to object to the enhancement of the offense from a second degree felony to a first degree felony pursuant to Florida Statute § 775.087. Specifically, Defendant claims that on July 12, 2004, the State asked the Court to consider enhancing the sentence based on the use of a deadly weapon. Defendant argues the Information did not charge the facts necessary to support an enhancement and the Information was never amended before trial thus violating his right to be fairly notified of the possibility of enhancement. Defendant further states that had his counsel objected to the lack of notice there is a reasonable probability the outcome of the proceedings would have been different and at the very least the issue would have been preserved for appeal. After reviewing the allegations, the court file, and the record, the Court finds Defendant's allegations are facially sufficient.
>
> In order to prevail under *Strickland*, Defendant must demonstrate that his trial counsel's failure to object was "outside the broad range of reasonably competent performance under prevailing professional standards." *Maxwell v. Wainwright*, 490 So. 2d 927, 932 (Fla. 1986). In other words, "counsel cannot be deemed ineffective for failing to make a meritless objection." *Hitchcock v. State*, 991 So. 2d 337, 361

(Fla. 2008). If an objection would have been meritless, the claim of ineffective assistance of counsel must be denied.

Defendant is correct in asserting the grounds for enhancement of a sentence must be charged in the information. *See Whitehead v. State*, 884 So. 2d 139, 140 (Fla. 2d DCA 2004). However, while the phrase "deadly weapon" was not specifically used, the Information in this case sufficiently charged the grounds for enhancement by setting forth the facts upon which the enhancement would be predicated. Specifically, the Information charged that Defendant:

> did unlawfully, by an act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, kill one LUCIUS SMITH JR., by hitting or striking the victim and in doing [sic] so the said defendant used his hand and/or a blunt object.

Since the Information charged Defendant with using his hand and/or a blunt object to hit or strike the victim, the facts supporting the enhancement were properly charged. Therefore, any objection would have been meritless and counsel was not ineffective for not objecting.

Additionally, Defendant was not prejudiced by the failure to object for the purpose of preserving the issue for appeal. The record demonstrates Defendant filed a Motion to Correct Sentence pursuant to 3.800(b)(2) on September 12, 2005. A motion pursuant to Rule 3.800(b)(2) allows a defendant to preserve issues for appeal despite a lack of contemporaneous objection. In his September 12, 2005, motion, Defendant claimed reclassification of his offense was improper because the Information did not allege he used a deadly weapon. Therefore, regardless of whether the issue was pursued on appeal, the issue was properly preserved for appeal. Accordingly, Defendant is not entitled to relief . . . .

"[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). *See also Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (explaining that "[s]tate courts are the ultimate

expositors of state law," and federal courts must abide by their rulings on matters of state law) (citations and footnote omitted). "Although an ineffective assistance of counsel claim is a federal constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law.'" *Will v. Sec'y, Dep't of Corr.*, 278 F. App'x 902, 908 (11th Cir. 2008) (citing *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)). *See also Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under state law had [the applicant's counsel] done what [the applicant] argues he should have done . . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997) ); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [the applicant's counsel] objected to the introduction of [the applicant's] statements based on [state law] — the objection would have been overruled . . . . Therefore, [the applicant's counsel] was not ineffective for failing to make that objection.").

The basis for Robinson's ground of ineffective assistance of trial counsel is counsel's failure to object to the application of the sentence enhancement under state law. Both the state post-conviction court in rejecting Robinson's ground of ineffective assistance of counsel and the state appellate by affirming that rejection

have answered the question of what would have happened if counsel had objected to the trial judge's application of the enhancement. (Respondent's Exhibit 9, pp. 82–83 and Exhibit 14)  The state courts' interpretation of state law is afforded deference. Because the state post-conviction court and the state appellate court concluded that the trial judge properly applied state law, Robinson establishes neither deficient performance nor resulting prejudice from counsel's alleged error.  *Strickland*, 466 U.S. at 691–92.  Robinson fails to meet his burden of proving that the state court unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground.  28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Six**

Robinson contends that his trial counsel rendered ineffective assistance by not objecting to the sentence enhancement based on the state's alleged failure to present evidence that Robinson used or possessed a weapon.  In his reply Robinson asserts that the state post-conviction court's denial of this ground of ineffective assistance of counsel violates *Blakely v. Washington*, 542 U.S. 296 (2004).

The state post-conviction court denied this ground in Robinson's Rule 3.850 motion (Respondent's Exhibit 9, pp. 83–84) (court's record citations omitted):

> Defendant alleges counsel, Deborah Goins, was ineffective for failing to argue the enhancement was improper because there were not sufficient jury findings to support it. Defendant claims the evidence was insufficient to support a finding that a deadly weapon was used. He claims he never admitted guilt to the offense charged and no evidence was introduced at trial establishing Defendant used a deadly weapon. Additionally, Defendant notes any findings by the judge were insufficient. He argues that "since only a jury can make that determination beyond a reasonable doubt, Ms. Goins was ineffective by not

objecting." He explains that while he did waive his right to a jury trial on the finding of guilt based on the offense charged, he did not waive his right to a jury finding on the use of a deadly weapon. He goes on to state that had his counsel made an argument regarding the insufficiency of the evidence and lack of proper findings, the court would not have enhanced his sentence. After reviewing the allegations, the court file, and the record, the Court finds Defendant's allegations are facially sufficient.

In this case, Defendant waived his right to a jury trial. In so doing, he waived his right to have the question of whether he used a deadly weapon determined by a jury. *See Jacques v. State*, 1 So. 3d 1172 (Fla. 4th DCA 2009); *see also Blakely v. Washington*, 542 U.S. 296, 310 (2004) (explaining a defendant can waive rights under *Apprendi* and consent to judicial fact finding). Therefore, any objection regarding the right to a jury finding would have been meritless.

Additionally, the judge, as fact finder, made specific findings that supported reclassification. On July 13, 2004, the Court found Defendant guilty of the lesser included offense of manslaughter. The Court then stated it would be enhancing the offense based on the use of a deadly weapon. In support of the enhancement, the Court stated the following:

> THE COURT: I can go ahead and make the ruling now that I did find that beyond a reasonable doubt that the defendant used a deadly weapon in the commission of the offense to wit: a fire extinguisher. And accordingly, the Court is enhancing the defendant's manslaughter conviction from a second degree felony to a first degree felony. Jury instruction 3.3(b) defines a weapon, a deadly weapon as a — a weapon is legally defined to mean any object that could be used to cause death or inflict serious bodily harm. And the case law indicates that it's within the Court's discretion to make a determination as to what constitutes a weapon for purposes of the enhancement.

> And because of the nature of the fire extinguisher, the size, the weight, et cetera, I am making a finding that, in my opinion, beyond any reasonable doubt, that it was a deadly weapon.

> Since the trial court's findings of fact supported the
> enhancement, defense counsel was not deficient in failing
> to object to the enhancement. Accordingly, Defendant is
> not entitled to relief . . . .

The basis for Robinson's ground of ineffective assistance of trial counsel is counsel's failure to challenge the application of the sentence enhancement under state law. This court must defer to the state court's interpretation of state law. *Richey*, 546 U.S. at 76; *Will*, 278 F. App'x at 908. Because the state post-conviction court and the state appellate court concluded that the trial judge properly applied state law, Robinson establishes neither deficient performance nor resulting prejudice from counsel's alleged error. *Strickland*, 466 U.S. at 691–92. Robinson fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground. 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Seven**

Robinson contends that his trial counsel rendered ineffective assistance by not informing him before he waived his right to a jury trial of the possibility of a sentence enhancement. Robinson claims both that his decision to waive a jury trial was not "knowing, informed, and intelligent" as a result of counsel's error and that absent the error he would have proceeded to a jury trial.

The state post-conviction court granted Robinson an evidentiary hearing on this ground. Robinson testified on direct examination at the evidentiary hearing as follows (Respondent's Exhibit 9A, transcript of February 3, 2012, hearing, pp. 6–11):

Q: Okay. Did you in fact waive your right to a jury trial in this case?

A: Yes, sir.

Q: All right. Did you discuss that before you did that with your attorney?

A: Yes, sir.

Q: All right. In discussing that with your attorney, why did you come to the conclusion that it was a good idea to waive your jury trial?

A: Going to a bench trial, it would eliminate the emotional element that you have, you find normally in a jury trial. And the chances of being convicted of a second degree murder, which was the original charge, would likely be decreased if the judge were to go by the rule of the, the letter of the law. She felt as though the elements weren't there in my case to convict me of second degree murder.

Q: Okay. So that entire reasoning that you just gave, is that what you — came from [counsel]?

A: Yes.

Q: Okay. And you agreed with that decision?

A: Yes, sir.

Q: Okay. So what was the benefit if the judge followed the letter of the law and didn't convict you of the second degree murder? What was the benefit you could receive in that situation?

A: Well, the benefit would have been a lesser sentence. Second degree murder carries a term of life imprisonment, whereas a lesser included, greater significant, less significant time, 15 years max according to [counsel].

Q: Okay. And I want to ask you some questions about that. What lesser — she informed you that the charge of second degree murder, the max is life, right?

A: Yes, sir.

Q: Did she inform you what lesser included offenses were possible at trial?

A: Yes, sir.

Q: And what offenses do you recall that she told you?

A: Manslaughter. That was the only lesser included ever discussed.

Q: All right. And what was the maximum sentence [for] manslaughter?

A: Fifteen years.

Q: Okay. So when you were waiving your right to a jury trial, . . . you did so in discussion with her, based on those penalties[?]

A: Yes, Sir.

Q: When you went to trial, you were convicted, obviously. You were convicted of manslaughter, right?

A: Yes, sir.

Q: However, 15 years was not the maximum, was it?

A: No, sir.

Q: What was the maximum on your sentence?

A: Thirty years.

Q: And had you known that max on the manslaughter, that it could be, and it's in the court record that it was enhanced. It's a second degree felony, enhanced to a first degree felony, and it was. Had you known that manslaughter could be enhanced to a 30 year crime, would you have gone forward with waiving your right to a jury trial?

A: No, sir.

. . . .

Q: At any point prior to trial were you made aware by anyone that the penalty of the second degree felony manslaughter could

be enhanced with a deadly weapon exception to a 30 year crime?

A: No, sir.

Q: When's the first time you heard about that?

A: During trial, July 12th in the morning time.

Q: Okay. And who, did [counsel] tell you about that? Did it happen on the record? When did that happen?

A: Well, it happened on the record. [Counsel] asked the judge, they said that they didn't know exactly how he would rule but he could consider manslaughter with a deadly weapon. That was my first time hearing about it.

Q: Okay.

A: Period. Ever.

Q: And did you question [counsel] about that?

A: No. Not immediately. I didn't have a chance because, like I said, it was July 12th. It was during trial. They made the statement, the suggestion to the judge. She brought over the Florida Statutes book to me, told me, well, yeah, they can do that. We had a discussion afterwards. But never prior to the state asking the judge to consider manslaughter with a deadly weapon.

Q: And after the state asked the judge to, did you ever discuss that with your attorney?

A: Yes.

Q: And what was, how did that discussion play out?

A: Basically, well, it's a statute enhancement, they can do it if they find that you used a weapon. And that was it basically.

Robinson again testified on cross-examination that he agreed with counsel's recommendation to proceed to a bench trial but claimed he did not know about the

possibility of an enhancement (Respondent's Exhibit 9A, transcript of February 3, 2012, hearing, pp. 27, 33):

> Q: Okay. So you felt that there was a chance that you might even be acquitted at a bench trial.
>
> A: I felt as though [counsel] being knowledged [sic] in the law, that I would follow her advice.
>
> Q: But you admit in your motion, in your own words, that [counsel] advised you that Judge Black could find you guilty of . . . manslaughter.
>
> A: Yes, sir.
>
> Q: Okay. And is it your testimony that if you had known that there was a possibility of a first degree manslaughter as a lesser included offense that you would have chosen a jury over a judge as the finder of fact?
>
> A: To be more specific, if I made, if I had known that the State had the burden of proof, to prove that I had this weapon in my possession, I would have went to a jury trial. Had that been discussed. That was never discussed with me. Never. I never knew that the enhancement even existed at all. But yes, I would have went to a jury trial.

Trial counsel testified on direct examination at the evidentiary hearing that she discussed with Robinson whether to proceed to a jury trial or a bench trial (Respondent's Exhibit 9A, transcript of February 3, 2012, hearing, pp. 54–57):

> Q: Now, did you have any discussion with Mr. Robinson about what the lesser included offenses of second degree murder were?
>
> A: I did.
>
> Q: Can you please tell the court about that?
>
> A: Well, I think — well, I can look at the notes that I saw. And it's very evident that we talked about the fact that there was a difference between manslaughter and second degree murder in that it would not require — ill will, spite, hatred or evil intent

would not be an issue and that that really was the issue. And in my reviewing this I actually came across a notation where I had spoken with Mr. Robinson and I indeed told him and gave him the impression that manslaughter, I failed to take into consideration the weapon that enhanced it to an F1. So we did talk in term of manslaughter and . . . 15 years as a maximum penalty for manslaughter if he got a lesser at trial.

Q: So you concede here today that you did not discuss with Mr. Robinson the possibility that there was a first degree felony lesser included offense[?]

A: That's true.

Q: Okay. Ma'am, was there a point where you discussed with Mr. Robinson the possibility of trying this case before Judge Black as opposed to a jury?

A: Yes, there was.

Q: And when did you first discuss that with Mr. Robinson?

A: Let's see. I'm looking to see if I can find my first notation. And I don't believe that the issue about the jury trial versus non-jury trial had come up until after the state had gotten the — I want to make sure of this. I'm seeing, from a date standpoint of talking with Mr. Robinson, I know in July of 2004, which was the month the trial was held. It's potentially, we could have talked about it a little before that but it was very evident to me in looking over, and just even remembering, I actually remembered this case because of the fact that it is the only homicide case that I'd ever tried to the court. And that the issues had to do with the differences between second degree and manslaughter. And so I'm seeing the notation in July of 2004 about the idea of going without a jury.

Q: Well, is it fair to say your discussion with Mr. Robinson about the option of a bench trial was, it occurred fairly shortly before the actual trial occurred?

A: Yes, I think that's true. And I know there were some other times when a trial with a jury was discussed on June the 30th when I sent my investigator to the jail to talk to Mr. Robinson about a letter he had sent to me. That issue again came up and then I know that I spoke with him, pursuant to my notes, as recently as July the 2nd, which the trial was held on July 12th,

in a video conference, again talking about non-jury and that the state was amendable to going non-jury.

Q: And I think we all know the answer to this, but for purposes of the record, in your experience, is it a fairly unusual step to try any homicide case in a bench trial in the state of Florida as opposed to a jury trial?

A: It is. But like anything else, I guess, you look at your particular situation and assess all the pros and cons of that.

Q: Well, could you please explain to the court what was involved in your decision to even broach the subject with Mr. Robinson?

A: Well, I know that Mr. Robinson had concerns about the idea that the jury may judge him unfairly because they're not knowledgeable of the law and that he felt like, I think it's because probably Judge Black had already granted a motion to suppress that I had done, which took out the lion's share of the statements the State would have tried to use against Mr. Robinson. So I think he was thinking in terms of maybe the judge might be more articulate and understandable about the law and because we were sort of going from the difference between second degree [murder] and manslaughter, that he felt like he was more comfortable with a non-jury trial. And then I can't speak for the degree of reliance that he had upon the issue about whether it was, whether he knew that there was a lesser of second degree that could have been manslaughter with a weapon, which would have been an F1. That was not a major feature at that point and I would certainly think that was because I had not breached that to him.

Q: Okay.

A: And it was just, it was totally, I understand 775.087, I have since reviewed it and just, you know, I'm thinking, I missed that.

Trial counsel must decide which strategic and tactical option to pursue. *See, e.g., Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision . . . appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that

no competent attorney would have chosen it."). Trial counsel's advice to waive a defendant's right to a jury and proceed with a non-jury trial is a "classic example of strategic trial judgment" for which *Strickland* requires highly deferential judicial scrutiny. *Hatch v. State of Okla.*, 58 F.3d 1447, 1459 (10th Cir. 1995). *See also Burns v. Hompe*, 339 F. App'x 624, 629 (7th Cir. 2009) ("*Strickland* requires great judicial deference to strategic decisions such as whether to waive trial by jury.") (citing *Green v. Lynaugh*, 868 F.2d 176, 178 (5th Cir. 1989)). Counsel's advice to waive a jury trial "constitutes a conscious, tactical choice between two viable alternatives." *Hatch*, 58 F.3d at 1459. "For counsel's advice to rise to the level of constitutional ineffectiveness, the decision to waive a jury trial must have been 'completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy.'" 58 F.3d at 1459 (quoting *United States v. Ortiz Oliveras*, 717 F.2d 1, 4 (1st Cir. 1983)).

The record establishes that counsel advised Robinson to elect a bench trial over a jury trial as a matter of strategy. Robinson admitted that he discussed with counsel whether to proceed to a bench trial and that Robinson's decision was based on his belief that a bench trial could "eliminate the emotional element." Even if counsel performed deficiently by not advising Robinson of the potential sentence enhancement, Robinson presents no evidence demonstrating either (1) that he would have proceeded to a jury trial despite his concern about the "emotional element" of the facts (if Robinson feared an emotional jury and preferred a judge on a twenty-year sentence, why would he not prefer a judge even more on a thirty-year

sentence) or (2) that, if he were convicted by a jury rather than a judge, the judge would not have applied the enhancement. *See Strickland*, 466 U.S. at 694. Robinson fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground of ineffective assistance of counsel. 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Eight**

Robinson contends that his trial counsel rendered ineffective assistance by not advising him of the possibility of an enhanced sentence, resulting in Robinson's rejecting a favorable plea offer. Robinson claims that counsel told him that "the state would not be able to prove all the elements of second degree murder" and that "at worst, he might be convicted of manslaughter . . . which . . . carried a maximum sentence of no more than 15 years." (Doc. 23, p. 22) Robinson alleges that he rejected a plea offer of twenty years imprisonment "because it was more than the max [counsel] said he would receive if found guilty of manslaughter." (Doc. 23, p. 22)

The state post-conviction court granted Robinson an evidentiary hearing on this ground. Robinson testified that if he had known that a conviction for manslaughter could carry a thirty-year sentence "[t]here's a possibility I would have given more consideration to a plea of 15 years, in light of 20 years." (Respondent's Exhibit 9A, transcript of February 3, 2012, hearing, p. 9) Trial counsel testified that before trial the state attorney "indicated that Mr. Robinson could plead to second degree murder, which would have been as charged, for the bottom of the guidelines,

which at that point was 20.5 years, or just do a straight-up plea with no agreement as to a potential count." (Respondent's Exhibit 9A, transcript of February 3, 2012, hearing, p. 53) Trial counsel testified that she discussed these offers with Robinson but that Robinson was not amendable to either offer.

The state post-conviction court denied this ground after the hearing (Respondent's Exhibit 9A, final order denying motion for post-conviction relief, pp. 5–10) (court's record citations omitted):

> Defendant alleges Goins was ineffective for misinforming Defendant regarding the maximum sentence he was facing. Specifically, Defendant claims that during plea negotiations he was offered 15 years in exchange for pleading guilty. He states he turned down the offer because he was told he would not receive a sentence of more than 15 years if convicted of the lesser included offense of manslaughter. He further claims his counsel never told him that he might be subjected to a 30 year sentence. In his motion, Defendant states that had his counsel not misinformed him regarding the potential maximum sentence, he would have accepted the offer of 15 years.

> When an ineffective assistance claim is based on rejection of a plea offer, the defendant must prove the following: "(l) counsel failed to communicate a plea offer or misinformed defendant concerning the penalty faced, (2) defendant would have accepted the plea offer but for the inadequate notice, and (3) acceptance of the State's plea offer would have resulted in a lesser sentence.["] *Rudolf v. State*, 851 So. 2d 839, 841 (Fla. 2d DCA 2003) (quoting *Cottle v. State*, 733 So. 2d 963, 965 (Fla. 1999)). Here, elements one and three are satisfied because Goins admitted to misadvising Defendant about the maximum penalty he faced . . . and because the State's offer of 20.5 years [in] prison is less than Defendant's sentence of 22 years.

> Defendant, however, has failed to meet his burden of satisfying element two by showing that . . . he would have accepted the plea offer of 20.5 years [in] prison. At the evidentiary hearing, Defendant gave the following testimony:

>> [State Attorney]: Okay. Now, you said . . . if you had known that manslaughter with a weapon

was a possible lesser included offense, that you would have accepted an offer of 15 years in Florida State Prison, correct?

Defendant: No, that's not correct. I didn't say I would have accepted any prison time. As a matter of fact, the State asked me to make an offer first. I was arrested in August and the State instructed [counsel] around October, November for me to make an offer. And my offer was five years probation. At no time at all was I willing, at that time, to discuss prison terms at all. I never said I would —

[State Attorney]: Mr. —

Defendant: — be willing to accept —

[State Attorney]: — Robinson, didn't you just testify a few minutes ago that if you had known about the possibility of manslaughter with a weapon as a lesser included that you would have taken a 15-year prison offer? That was your testimony —

. . . .

Defendant: Excuse me, sir. I don't recall ever saying that I would acquiesce to 15 years in prison. Fifteen years does not mean you have to go to prison. It could have been paper. Probation. It could have been a split sentence. But I never one time recall ever saying that I would agree to 15 years incarceration. I don't recall ever saying that ever.

. . . .

[State Attorney]: Okay. I'm referring to page nine of your motion and this is under ground three. And I'm quoting from this first paragraph here. "She never told the defendant that the court could enhance the sentence based on the use of a deadly weapon. The defendant states that had he been informed of the possibility of a 30 year sentence for the lesser included manslaughter, he

would have accepted a 15 year sentence or guideline sentence." Did you read that?

Defendant: Nowhere in there is there anything about incarceration. A 15 year sentence does not necessarily mean 15 years incarceration. There are people who receive 30 years probation.

[State Attorney]: Okay. So is your testimony that this morning, when you testified, you meant only that you would have accepted a 15 year probation sentence[?]

Defendant: I would have accepted something lesser than 30 years. Yes, sir.

[State Attorney]: But that offer was never made to you, was it?

Defendant: Which offer?

[State Attorney]: The only plea offer that you ever received from the State Attorney's Office was for bottom of the sentencing guidelines to second degree murder, which was 20.5 years in Florida State Prison, isn't that correct?

Defendant: No, that's not correct. Ms. Goins — no, it's not correct.

. . . .

[State Attorney]: Now, your counsel gave me some portions of the transcript of your, of various hearings leading up to your trial today. Have you had an opportunity to review these?

Defendant: Yes, sir.

[State Attorney]: Do you ever recall Mr. John Rogers stating on the record in this courtroom that the State's offer to you was 20.5 months [sic] in Florida State Prison?

Defendant: Yes. Yes, sir.

[State Attorney]: Okay. So that was the State's offer, correct?

Defendant: Yes, sir.

[State Attorney]: And there was no other offer for you to have accepted.

Defendant: Right.

[State Attorney]: All right. So your options were to go to trial in front of a judge or jury or accept the State's offer, correct?

Defendant: Yes, sir.

[State Attorney]: Okay. But there was never any offer of probation, whether 15 years or prison for 15 years. That was never offered to you.

Defendant: (No response).

[State Attorney]: Correct?

Defendant: Yes, sir.

[State Attorney]: So your choices were the offer of 20.5 years in Florida State Prison or trial.

Defendant: (No response).

[State Attorney]: Correct?

Defendant: Yes, sir.

Additionally, [counsel] testified that she discussed the State's plea offer of 20.5 years with Defendant as well as an open plea, and that Defendant was not amenable to any of those options. Based on the testimony at the evidentiary hearing, the Court cannot conclusively say that Defendant would have accepted the State's plea offer of 20.5 years prison had he known that he faced a maximum penalty of 30 years. As such, Defendant has not satisfied element two, and the Court must deny [this] claim . . . .

To show prejudice when a plea offer expires or is rejected because of counsel's ineffective assistance, an applicant must demonstrate (1) that "a reasonable probability [exists] that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)," (2) that "the court would have accepted its terms," and (3) that "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 164 (2012). Robinson fails to show that he would have accepted the state's plea offer of 20.5 years incarceration. His evidentiary hearing testimony shows his unwillingness to accept an offer that included imprisonment. He presents no evidence that any plea offer for a term of probation existed that he could have accepted. Consequently, he cannot satisfy *Lafler's* requirement that he show he would have accepted the plea offer. Robinson fails to meet his burden of proving that the state court either unreasonably applied *Strickland* and *Lafler* or unreasonably determined the facts by rejecting this ground of ineffective assistance of counsel. 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Nine**

Robinson contends that his trial counsel rendered ineffective assistance by waiving without his consent a presentence investigation report ("PSR"). Robinson claims that the report "would have given background information . . . beyond what was already known by the court: his educational background, social status/standing, economic background, etc." (Doc. 23, p. 24)

The state post-conviction court afforded Robinson an evidentiary hearing on this ground. Robinson admitted that his counsel argued at the sentencing hearing for a lower sentence and that counsel presented on his behalf (1) a mitigation memorandum, (2) letters to the sentencing judge from Robinson's friends and family, and (3) testimony from both of Robinson's parents. (Respondent's Exhibit 9A, transcript of February 3, 2012, hearing, pp. 39–40) Robinson testified that a PSR would have aided his argument for a lower sentence. (Respondent's Exhibit 9A, transcript of February 3, 2012, hearing, pp. 11–12).

Trial counsel testified at the evidentiary hearing about her sentencing strategy (Respondent's Exhibit 9A, transcript of February 3, 2012, hearing, pp. 57–59):

> Q: Okay. And moving on to after the actual trial, at this point, would Mr. Robinson have been entitled to a Pre-Sentence Investigation?
>
> A: I believe he would have. . . .
>
> Q: Did you request that Pre-Sentence Investigation occur on Mr. Robinson's behalf?
>
> A: I did not.
>
> Q: And can you explain to the court why you did not request [a] Pre-Sentence Investigation?
>
> A: Because I have never had a Pre-Sentence in my 30 years, especially on a case where I knew that there could be a lot of background information that the court may not otherwise know that could be generated by the Department of Corrections. I've never considered the Department of Corrections to be my gatherer of mitigation and that I knew that I already had family members who were very concerned. I think I thought I had a compelling story to tell on behalf of Mr. Robinson about his life, about his parents, and to give the judge a favorable view of Mr. Robinson. I saw no purpose in having [the] Department of Corrections start making phone calls and then write a lot of

hearsay in the Pre-Sentence Investigation Report that I'm concerned the judge would rely upon.

Q: And did you, in fact, at sentencing present some mitigation on Mr. Robinson's behalf?

A: I did.

Q: And could you please tell the court the nature of the mitigation that you presented on Mr. Robinson's behalf?

A: His sister was presented; his mother and father were presented. His father had been with, I believe, H&R Block for many years; his mother had also been employed but they were involved in a church ministry, very articulate, fine people. His sister was a great, had a great amount of concern for him, and they had been concerned about him for many years. And of course they spoke on his behalf and gave information about how helpful he was in the community and to his family. And that was what I felt was helpful, to show not only that he had this kind of support system . . . behind him but also that he himself was, you know, striving to become a truck driver, which is [what] he wanted to do. And also to show the judge that this was an isolated type of incident, which would go to the question of actually departing the guidelines downward.

Q: And did you actually present any mitigation in the form of a written motion or memorandum?

A: Well, I had done a written memorandum just indicating to the court that the isolated incident aspect could be a reason why the court could depart downward.

Q: Okay. Were there also letters or support expressed on Mr. Robinson's behalf from individuals other than from his family?

A: Yes, there were.

Q: And do you recall how many letters there were, or approximately?

A: I think I charted them out and . . . I'd say at least we had had maybe eight. Maybe eight to ten letters —

Q: Okay.

A: — on his behalf.

Q: And . . . what did you ask the judge to do as far imposing the sentence in this case?

A: I had asked the court if they would depart the guidelines and give him a supervision kind of sentence. And I was hopeful that the court was not going to certainly give him the maximum. And I guess it's, from my experience, I didn't think the judge would give him the maximum, which at that point was a potential for 30 years.

The state post-conviction court denied this ground of ineffective assistance of counsel after the hearing (Respondent's Exhibit 9A, final order denying motion for post-conviction relief, pp. 10–11) (court's record citations omitted):

Defendant alleges [counsel] was ineffective for waiving Defendant's presentence investigation (PSI) without Defendant's consent. Defendant claims he told his counsel several times he wanted a PSI completed. However, Defendant claims no PSI was ever completed because his counsel waived that option. Defendant further claims a thorough investigation would have allowed for the presentation of mitigating factors. In his motion, Defendant states had his counsel not failed to use the PSI to present mitigating factors, he would likely have received a lesser sentence.

At the evidentiary hearing, [counsel] testified that Defendant was entitled to a PSI, but said she decided to forego it. [Counsel] explained the reasons for not requesting the PSI . . . .

Additionally, [counsel] testified that she did present mitigation on behalf of Defendant in the form of testimony from Defendant's family, a written memorandum, and at least eight letters from other individuals who knew Defendant. The Court concludes that the decision to forego a PSI to which Defendant was entitled was a reasonable strategic decision given [counsel's] gathering and presentation of mitigation evidence on her own. Because strategic decisions do not constitute ineffective assistance if alternative courses have been considered and counsel's decision was reasonable under the norms of professional conduct, the Court finds [counsel] was not ineffective. *See Occhicone*, 768 So. 2d at 1048 (Fla. 2000). Further, the Court notes that "failure to request a pre-sentence investigation report does not establish prejudice since the results

of such an investigation would be pure speculation." *See Washington v. State*, 397 So. 2d 285, 287 (Fla. 1981). Therefore, the Court must deny [this] claim . . . .

Robinson's argument that a PSR would have resulted in a lower sentence is speculative. Even assuming that he was entitled to a PSR and that counsel performed deficiently by not requesting a PSR, Robinson fails to demonstrate prejudice under *Strickland*. Tactical decisions within the range of reasonable professional competence are not subject to collateral attack unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). In assessing a lawyer's performance, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." *Chandler*, 218 F.3d at 1314. An applicant must overcome the presumption that counsel's conduct was a matter of strategy. *Strickland*, 466 U.S. at 689. A defendant's disagreement with counsel's tactics or strategy will not support a claim of ineffective assistance of counsel.

Robinson presents no evidence showing that counsel's decision to forego a PSR was unreasonable. The record supports the state post-conviction court's conclusion that counsel strategically decided to not request a PSR. The reasonableness of counsel's decision is supported by trial counsel's testimony at the evidentiary hearing. Robinson fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by

rejecting this ground of ineffective assistance of trial counsel. 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Ten**

Robinson contends that his trial counsel rendered ineffective assistance by not investigating the crime scene. Robinson claims that the state's theory was that Robinson murdered the victim for monetary gain. Witness Leon Martin testified for the prosecution that Robinson "made no purchases on the trip from Chicago to Florida." (Doc. 23, p. 26) Robinson alleges that there was evidence inside the truck where the crime occurred — including cash, receipts, and other personal effects of Robinson's — that would have refuted Martin's testimony. Robinson argues that despite having access to the truck, trial counsel failed to investigate this evidence, resulting in prejudice to his defense.

The state post-conviction court afforded Robinson an evidentiary hearing on this ground. Robinson testified that he asked trial counsel to investigate the crime scene (Respondent's Exhibit 9A, transcript of February 3, 2012, hearing, pp. 13–15):

> Q: Okay. The next claim involves a failure to investigate pre-trial by your attorney . . . . In that one you allege she did not investigate the crime scene, correct?
>
> A: Yes, sir.
>
> Q: Again, we have the transcript and the facts of the case on file, but tell us why it would have been important for [counsel] to go to the crime scene.
>
> A: Well, the State's case was premised upon, their motive was robbery. They made accusations that I killed this man for benefit of money. Well, again, there was a witness on the stand, Leon Martin. They put him on the stand and he said that we

didn't make no stops from Chicago to Florida. We made no purchases, no food, no beverages. There was nothing purchased, I never had any money. Had [counsel] went to the truck she would have found receipts that were time-stamped. Purchases made by myself that were kept for the purposes of record. You know, being a truck driver, I get reimbursed for my expenses. . . . So it's a habit of mine, being a professional truck driver for over five years, to keep my receipts. You . . . know, they said, well, Leon Martin, he got on the stand, said well, this guy, he never purchased anything. No food, no drink, nothing in the course of four days. This is the claim that this, you know, Leon Martin, the state witness made. Well, the receipts obviously would have shown different. You know.

Q: Okay. Now, did you discuss with [counsel] the need for these receipts? Did you tell her of their existence . . . pre-trial?

A: Yes, sir.

Q: You did?

A: Yes.

Q: Did [counsel] inform you of any efforts to obtain these receipts that were —

A: No, sir.

Q: Okay. And you said they were in the truck, which is the crime scene in this case?

A: Yes, sir.

Q: Do you know what happened to the truck after you were arrested?

A: The truck was impounded. Shortly thereafter it was returned to Chicago.

Q: Okay. And to this date, do you know what's going on with those receipts, if they have been located anywhere, if they were saved by anyone else?

A: All of my property was destroyed.

Trial counsel testified at the evidentiary hearing that she did not investigate the truck (Respondent's Exhibit 9A, transcript of February 3, 2012, hearing, p. 65):

> Q: Did you ever have a discussion with Mr. Robinson related to receipts that should be in the truck?
>
> A: I think that, I know receipts came up, and I actually know that there were some kind of receipts in the discovery itself. It may not have been what Mr. Robinson was looking at, but I have to say today, I don't know, I can't specifically remember what that was . . . but I know it would all have related to this issue of trying to show that Mr. Robinson himself had money and was not therefore concerned with trying to get money from [the victim].
>
> Q: Would there have been an opportunity for you, during the course of your representation, to have conducted an independent search of that cab of the truck?
>
> A: Well, I would not have seen the need for that. I mean, considering what it might or might not yield, I did not consider that. And I don't recall specifically about talking about going and trying to get into the cab of the truck. I also don't recall how soon the cab was taken from this area or what condition it may have been in by the time they moved it.

The state post-conviction court denied Robinson's ground of ineffective assistance of counsel after the hearing (Respondent's Exhibit 9A, final order denying motion for post-conviction relief, pp. 12–13) (court's record citations omitted):

> Defendant alleges [counsel] was ineffective for failing to investigate the crime scene — a truck — where evidence existed. Specifically, he claimed that had [counsel] investigated, she would have discovered dated sales receipts that would have negated the State's theory that Defendant's motive was based on a dispute over money. Defendant also claimed there is a reasonable probability that if counsel had investigated the crime scene and presented the evidence found at the scene, he would not have been found guilty.
>
> At the evidentiary hearing, Defendant testified that the truck was impounded and returned to Chicago shortly after his arrest, and that his belongings were destroyed. Defendant also testified

that [counsel] was not appointed to represent him until at least a month after the offense occurred and he was arrested. [Counsel] testified at the hearing that she would not have seen a need to investigate the truck and that she could not recall how soon it was taken from the area.

The Court finds that neither Defendant nor [counsel] conclusively testified that the receipts and truck were still in the area when [counsel] was appointed. As such, Defendant failed to present evidence that [counsel] would have had an opportunity to examine the truck and locate the receipts, and has failed to establish that she was deficient. *See Strickland*, 466 U.S. at 686–87. Therefore, the Court must deny [this] claim . . . .

Robinson fails to show that the truck was available to counsel for inspection. He further fails to show that the outcome of his trial would have been different if counsel had investigated and presented the alleged receipts at trial. Robinson fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground of ineffective assistance of trial counsel. 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Eleven**

Robinson contends that his trial counsel rendered ineffective assistance by "coercing [Robinson] into withdrawing his request to testify, thereby eliminating his ability to claim self-defense." (Doc. 23, p. 28) After the state rested trial counsel moved for a judgment of acquittal. The trial judge took the motion under advisement and the defense presented its case. (Respondent's Exhibit 3A, p. 278) After the defense rested trial counsel renewed Robinson's motion for judgment of acquittal, which motion was denied. (Respondent's Exhibit 3B, p. 2) Trial counsel then advised the judge that Robinson wanted to testify. The prosecutor argued that

he didn't "think the defendant, after having rested and asked the court to rule on its renewed motion for judgment of acquittal, just because he doesn't like the court's ruling, can now choose to exercise his right testify." (Respondent's Exhibit 3B, p. 6) After further discussion with trial counsel and the prosecutor the trial judge recessed the proceedings "to take a look at some law." (Respondent's Exhibit 3B, p. 8) When the trial resumed, trial counsel announced that Robinson chose not to testify. (Respondent's Exhibit 3B, p. 9) The trial judge conducted a colloquy with Robinson in which Robinson averred that he did not want to testify.

Robinson alleges that he discussed with counsel whether to testify and that counsel advised him to testify if the trial judge denied Robinson's motion for judgment of acquittal. Robinson claims that trial counsel advised him that she could not help him if he chose to testify, which advice caused him to not testify. Robinson claims that he would have testified that he acted in self-defense. He further claims that pursuing a self-defense theory would have permitted counsel to request a special jury instruction on the "castle doctrine." Robinson argues that counsel's "coercion" resulted in his conviction by improperly "negating any defense he had to the charges against him." (Doc. 1, p. 28)

The state post-conviction court afforded Robinson an evidentiary hearing on this ground. Robinson testified that if he had taken the stand at trial he would have testified that he had no motive to kill the victim over money and that he acted in self-defense. (Respondent's Exhibit 9A, transcript of February 3, 2012, hearing, p. 19) Robinson explained what happened during the trial that caused him to change

his mind about testifying (Respondent's Exhibit 9A, transcript of February 3, 2012, hearing, pp. 21–22):

> Q: After the defense rested, the Court denied the JOA and at that point Ms. Goins state[d] that you want to testify, correct?
>
> A: Yes, sir.
>
> Q: And then there's a discussion as to whether or not you're even allowed to re-open your case and testify. The Court takes a break, assuming to go look some things up. The Court comes back and says he's going to allow you to testify and at that point, though, it's on the record . . . that you no longer wish to testify. Correct?
>
> A: Yes, sir.
>
> Q: However, the transcript is not running during the break. So my question is, when the Court left and you wanted to testify, and the Court came back, going to let you testify, something happened where you changed your mind —
>
> A: Yes.
>
> Q: — right?
>
> A: Yes, sir.
>
> Q: Explain to the Court what happened and why you no longer wished to testify and offer your self-defense argument.
>
> A: Judge Black said he would take a short recess to look up the case law. I was sitting over there in the jury box and Ms. Goins walked up and told me that, you know, if I testify, she couldn't help me. And I asked her why. She said she wasn't prepared, So —
>
> Q: So at that point with that information, what did you do?
>
> A: I decided I couldn't testify. She told me she couldn't help me. You know, she wasn't prepared so I really didn't think I had any other option.
>
> Q: Okay. So you proceeded with the trial without testifying.

A: Yes, sir.

Q: Was any evidence offered during the trial to refute the State's motive of money?

A: No, sir.

Q: Was any testimony offered that would support the argument of self-defense?

A: No, sir.

Q: Okay. And had you testified, those things would have been offered.

A: Yes, sir.

Trial counsel testified at the evidentiary hearing that she did not advise Robinson that she could not help him if he testified and that she was prepared to present his testimony if he chose to testify. (Respondent's Exhibit 9A, transcript of February 3, 2012, hearing, pp. 65–71)

The state post-conviction court denied this ground of ineffective assistance of counsel after the hearing (Respondent's Exhibit 9A, final order denying motion for post-conviction relief, pp. 14–17) (court's record citations omitted):

> Defendant alleges [counsel] was ineffective for coercing Defendant into withdrawing his request to testify. Defendant claims that after he informed the Court he wished to testify his counsel told him, "If you testify, I can't help you." Defendant argues this statement amounted to coercion. In support of his claim, Defendant explains that he would have testified that the victim was the aggressor and Defendant was merely acting in self-defense. Defendant further states "there was evidence to support a theory of self-defense" and because Defendant had no prior felony convictions on his record his character would have been unimpeachable. In his motion, Defendant states his testimony would have presented a defense that was "viable and sound" and had his counsel not prevented him from testifying, the outcome of the trial might have been altered greatly.

In determining whether a defendant is entitled to relief based on a claim that counsel was ineffective for misadvising him about testifying at trial, the following analysis must take place:

> The first step . . . is to determine whether the defendant voluntarily agreed with counsel not to take the stand. If that is established, then the trial court must answer the separate and second question which is whether counsel's advice to defendant "even if voluntarily followed, was nevertheless deficient because no reasonable attorney would have discouraged [defendant] from testifying."

*Hayes v. State*, 2012 WL 470232 *1 (Fla. 2d DCA Feb. 15, 2012) (quoting *Simon v. State*, 47 So. 3d 883, 885 (Fla. 3d DCA 2010)).

At the evidentiary hearing, Defendant testified that [counsel] told Judge Black that he wanted to testify, and that the Court then took a recess. Defendant testified that, during the recess, Defendant decided to not testify because counsel told him she would not be able to help him, and the Court then asked him if the decision was free and voluntary, to which Defendant responded affirmatively. [Counsel's] testimony differed greatly from Defendant's. [Counsel] testified as follows:

> Yes. That was something we definitely had to discuss, because we had to think in terms of, especially once evidence had been suppressed, after Judge Black had suppressed the more lengthy statements that were given by, to Detective Duran, I believe it was, and how that would affect and actually maybe help our case. So the question about whether or not he would testify, I think there were two, as far as I can glean from my notes, there were two concerns by Mr. Robinson. I think he was sort of wary of testifying. I think it made him very nervous. I can certainly understand why.

> But more specifically, I know that I made notations to myself on March the 25th of

2004, after we became aware that the State's, that the State had voluntarily dismissed their interlocutory appeal, and that this case was actually going to go to trial. And I had done what I call sort of a case summary, thinking in terms of what evidence do they have now that the suppression has been granted? How can that be an advantage to us?

. . . .

And . . . so these were things that factored into my thinking about what we would be able to do, because what was deleted from, by the virtue of the motion to suppress and the granting of such, is that the trier of fact, be it a jury or a judge, was not going to hear about information regarding the drug use by Mr. Robinson at any time, unless we opened the door to it, and therefore taking the stand could actually open the door to certain things coming in.

Secondly, that I felt that because we got, we were getting rid of this information about drugs, that it would negate the idea that the State could use drugs as a motive for the killing, and also his statements about why it happened and how it happened, which again were all related to cocaine. And the cocaine that was in the truck, and was, ended up in Mr. Robinson's mouth and then Mr. Lucius grabbed his mouth and actually, I believe, cut, or something, inside of his bottom lip.

So in discussing about whether to testify or not, I clearly did advise Mr. Robinson that there was information that wasn't going to come in, that would have otherwise come in but for the granting of the motion to suppress, and secondly, that if he did take the stand, his prior statements could come in for

impeachment, if he was saying something different. And that's what it, that's, we know because it did not have to do with coercion; it had to do with . . . the right to an attorney, that that is indeed the case. That it could only come in for impeachment, and not in the State's case in chief.

Additionally, [counsel] testified that she did not recall telling Defendant that she could not help him if he testified. She stated:

> That doesn't make a lot of sense to me. I think it would be fair for me to, I think I feel confident in saying what we'd still be talking about is the pros and cons, because if indeed Mr. Robinson testified and gave some additional information to the judge, that would sort of circumvent the judge's reasoning for getting to, granting a JOA in the first instance. Then the record would be different, and we might be in a different legal position. I mean, that's just logical. So, I, but I don't know. I did not make notes. I did not say, "I can't help you," because that — but I may have said, like, "That won't help you."

[Counsel] then testified that had Defendant chosen to testify that she would have been prepared to present his testimony. The Court finds [counsel's] testimony more credible than Defendant's. Based on the testimony, the Court finds as follows: First, Defendant voluntarily decided to not testify at trial based on his discussions with counsel regarding the possibility of opening the door to testimony that had been suppressed. *See Hayes*, 2012 WL 470232 *1. Second, [counsel's] advice to Defendant was reasonable trial strategy and was not deficient. *Id. See Occhicone*, 768 So. 2d at 1048. Therefore, the Court must deny [this] claim . . . .

A question of the credibility and demeanor of a witness is a question of fact.

*See Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (citing *Freund*

*v. Butterworth*, 165 F.3d .939, 862 (11th Cir. 1999) (*en banc*)). Under Section 2254(e)(1), "[f]ederal habeas courts generally defer to the factual findings of state courts, presuming the facts to be correct unless they are rebutted by clear and convincing evidence." *Jones v. Walker*, 540 F.3d 1277, 1288 n.5 (11th Cir. 2008) (*en banc*). *See also Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."), *cert. denied*, 513 U.S. 1161 (1995). "Determining the credibility of witnesses is the province and function of state courts, not a federal court engaging in habeas review. Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor was observed by the state court, but not by them.'" *Consalvo*, 664 F.3d at 845 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). This deference applies to a credibility determination that resolves conflicting testimony. *See Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over" the applicant's testimony."); *cert. denied*, 526 U.S. 1047 (1999). The deference is heightened when reviewing a credibility determination in a Section 2254 application. *Gore v. Sec'y, Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007), *cert. denied*, 552 U.S. 1190 (2008). *Accord Kurtz v. Warden, Calhoun State Prison*, 541 F. App'x 927, 929 (11th Cir. 2013) ("'A certain amount of deference is always given to a trial court's credibility determinations' and a credibility determination in a case on habeas review receives heightened deference.") (quoting *Gore*, 492 F.3d at 1300), *cert.*

*denied sub nom, Kurtz v. Jeanes*, 134 S. Ct. 2728 (2014)). The state court's credibility determination is presumed correct. *See Rice v. Collins*, 546 U.S. 333, 341-42 (2006) ("Reasonable minds reviewing the record might disagree about the [witness's] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").

The state post-conviction court found counsel more credible than Robinson. Robinson has not shown, by clear and convincing evidence, that the state court's credibility determination was unreasonable. *See Jones*, 540 F.3d at 1288 n.5. Robinson fails to meet his burden of rebutting with clear and convincing evidence the presumption of correctness afforded the state post-conviction court's credibility determination. 28 U.S.C. § 2254(e)(1). The state courts neither unreasonably applied *Strickland* nor unreasonably determined the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Twelve**

Robinson contends that his trial counsel rendered ineffective assistance by not "objecting to the state tolling his speedy trial time for appellate purposes." (Doc. 30, p. 44) Before trial Robinson successfully moved to suppress certain incriminating statements and evidence. On January 26, 2004, the state moved to both toll the speedy trial period and stay the proceedings while the state appealed the ruling on Robinson's two motions to suppress. The trial judge granted the state's motion the next day, on January 27, 2004 — the day that the 175-day speedy trial period

expired[7] — and ordered the state to commence the trial within ninety days after receipt of the mandate from the state appellate court. On March 9, 2004, the state moved to voluntarily dismiss its appeal. The state appellate court granted the motion on March 11, 2004. Robinson argues that his trial counsel should have filed a notice of expiration of speedy trial on the same day that the state appellate court dismissed the state's appeal. He asserts that the ninety-day period for the state to commence trial expired on June 8, 2004. The trial began on July 9, 2004. Robinson claims that if his trial counsel had filed the notice of expiration of speedy trial, "the trial court would have been obliged to dismiss the charge . . . and discharge him from his crime forever." (Doc. 1, p. 30)

The state post-conviction court afforded Robinson an evidentiary hearing on this ground. Robinson testified that counsel never filed a notice of expiration of speedy trial. (Respondent's Exhibit 9A, transcript of February 3, 2012, hearing, pp. 23–26) Trial counsel testified that she believed that the state could have proceeded to trial within the recapture period: (Respondent's Exhibit 9A, transcript of February 3, 2012, hearing, pp. 75–76):

> Q: Okay. Now, at the point of voluntary dismissal, which I believe has been established to be March 11th, could you have filed a notice of expiration of speedy trial at that time?
>
> A: Well, the judge had actually said he was going to give 90 days for the case to be tried. I had initially asked for an April trial date. [The prosecutor] said he wasn't available and then the trial date [of] July 6th was granted at that hearing. Later that was changed because it actually didn't go to trial until July

---

[7] Florida's speedy trial rule provides that the trial of a defendant charged with a felony shall commence within 175 days of arrest. Fla. R. Crim. P. 3.191.

the 12th and on July 13th — oh, I'm sorry, no. I had actually filed a demand for speedy trial, I believe, on July the 6th because of the fact that the trial was again getting pushed off and I thought that it was going out of bounds.

Q: I don't think I asked you this, but let me back up just to establish this. At any time prior to January 27th of 2004, did you ever waive speedy trial in this case?

A: I don't believe speedy trial was actually waived. No. I don't think . . . and we did not agree as such to the extension, even for the interlocutory, but . . . the judge ruled as he did.

Q: Now, based on the way this happened procedurally with the motion to suppress and the appeal, what is the earliest you actually could have filed a notice of expiration of speedy trial?

A: Well, considering if the judge gave 90 days for the case to be tried, is that what you're asking?

Q: No, ma'am.

A: In what context are you asking that?

Q: Could you have filed a notice of expiration of speedy trial after the appeal was voluntarily dismissed on March the 11th?

A: I guess I could.

Q: Okay. Did you have any reason to believe, if you had done so, that the state would not have been able to proceed to trial within the 14-day recapture period?

A: No, and that certainly was a, that was a fact. There was no reason why they would not have been able to get their witnesses for that purpose.

The state post-conviction court denied this ground of ineffective assistance of

counsel after the hearing (Respondent's Exhibit 9A, final order denying motion for

post-conviction relief, pp. 17–18) (court's record citations omitted):

> Defendant alleges [counsel] was ineffective for failing to file a notice of expiration of speedy trial. Defendant states that the speedy trial time ended four days after the Court granted his

motion to suppress. However, the State filed a motion to toll the speedy trial time while it appealed. After filing the notice of appeal, the State then voluntarily dismissed the appeal. Defendant argues the State's notice of appeal was untimely filed. He claims that because the appeal was untimely, his counsel should have moved to vacate the order allowing the speedy trial time to be tolled and filed a notice of expiration. Defendant claims counsel should have argued the appeal was frivolous and filed for the sole purpose of delaying the speedy trial time. Defendant alleges had his counsel properly filed a notice of expiration of speedy trial, the State would have been unable to try Defendant within the recapture period and the case would have been dismissed. In the alternative, Defendant states had his counsel properly filed the notice, the issue would have at least been preserved for appeal.

In order to prevail on a claim of ineffective assistance for failing to file a notice of expiration of speedy trial, a defendant must prove that the State could not have brought him to trial within the recapture period. *Dexter v. State*, 837 So. 2d 595, 596 (Fla. 2d DCA 2003). At the hearing, Defendant testified as follows after being asked if he had any evidence that the State would not have been able to proceed to trial within the recapture period:

> Defendant: Well, I can mention two things. One is the motion to toll the speedy trial. The reason given for granting the motion did not apply to my case. The reason why Judge Black gave, it says that it can be tolled if the evidence which was suppressed is to be used against another defendant.

> [State Attorney]: Well, we're not here to litigate now the rightness of rulings, or rightness or wrongness of Judge Black's rulings. I'm asking you, do you have any evidence that the State would not have been able to proceed to trial within two weeks of March the 11th, 2003?

> Defendant: They wouldn't have had time to compel the, file the motion to compel, which was filed afterwards. It was later. It came later, after it was voluntarily dismissed. So I don't know why you would have been able to go to trial. That's March; I didn't go to trial until July. And the motion to compel was after the motion was

voluntarily dismissed, around March 26th, I believe all of this happened at the same day. Like I said, I have my docket over there, but as I recall, I think it's March 26th, the State filed the motion to compel DNA. So no, I don't think they would have been able to re-capture at that time, in 14 days.

[State Attorney]: But you don't know that.

Defendant: No, I don't know it.

Defendant then testified that the DNA evidence that was compelled was not presented during the State's case, but instead was relied on during the defense's case. Additionally, when [counsel] was asked if she had any reason to believe that the State would not be able to proceed to trial within the recapture period, she testified: "No, and that certainly was a, that was a fact. There was no reason why they would not have been able to get their witnesses for that purpose."

Based on the testimony of Defendant and [counsel], the Court finds that Defendant has failed to establish prejudice because he has not proved that the State would not have been able to proceed to trial within the recapture period. Because Defendant has failed to establish prejudice, the Court must deny [this] ground . . . .

Robinson argues that his trial counsel failed to file a notice of expiration of speedy trial under state law. Robinson did not allege in his Rule 3.850 motion in the state court, nor does he allege in his federal application, that trial counsel rendered ineffective assistance by not asserting a violation of Robinson's constitutional right to a speedy trial. Both the state post-conviction court in rejecting Robinson's ground of ineffective assistance of counsel and the state appellate court in affirming that rejection have answered the question of what would have happened if counsel had asserted a violation of Florida's speedy trial rules. *See Herring*, 397 F.3d at 1354–55; *Callahan*, 427 F.3d at. Accordingly, Robinson shows neither deficient performance

nor resulting prejudice from counsel's alleged error. *Strickland*, 466 U.S. at 691–92.

Robinson fails to meet his burden of proving that the state court either unreasonably

applied *Strickland* or unreasonably determined the facts by rejecting this ground of

ineffective assistance of counsel. 28 U.S.C. § 2254(d)(1), (d)(2).

Accordingly, Robinson's amended application for the writ of habeas corpus

(Doc. 23) is **DENIED**. Robinson's second motion for judgment on the pleadings

(Doc. 80) is **DENIED** as moot. The clerk must enter a judgment against Robinson

and close this case.

**DENIAL OF BOTH
A CERTIFICATE OF APPEALABILITY
AND LEAVE TO APPEAL IN FORMA PAUPERIS**

Robinson is not entitled to a certificate of appealability ("COA"). A prisoner

seeking a writ of habeas corpus has no absolute entitlement to appeal a district

court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court

must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the

applicant has made a substantial showing of the denial of a constitutional right." To

merit a COA, Robinson must show that reasonable jurists would find debatable both

the merits of the underlying claims and the procedural issues he seeks to raise. *See*

28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*,

279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists

would debate either the merits of the claims or the procedural issues, Robinson is

entitled to neither a COA nor leave to appeal in forma pauperis.

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Robinson must obtain permission from the circuit court to appeal in forma pauperis.

ORDERED in Tampa, Florida, on February 6, 2020.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE